UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| LYDELL M. COUVILLION, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 4:04-cv-130 |
| | ) | |
| v. | ) | Honorable David W. McKeague |
| | ) | |
| MICHIGAN PAROLE BOARD et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that Petitioner is not entitled to habeas corpus relief.

**Discussion**

I.      Factual Allegations

Petitioner is currently incarcerated in the Florence Crane Facility. On October 12, 1994, Petitioner pleaded guilty in the Ingham County Circuit Court to one count of second-degree criminal sexual conduct and one count of assault with intent to commit first-degree criminal sexual conduct. He was sentenced to concurrent prison terms of five to fifteen years and five to ten years, respectively.

Petitioner's habeas petition concerns the denial of his parole by the Michigan Parole Board on July 22, 2004. (*See* Attach. to Compl., 7/22/04 Parole Board Notice of Action.) In his originial petition (docket #1), Petitioner asserts two grounds for habeas corpus relief. First, he claimed that 1999 amendments to MICH. COMP. LAWS § 791.234 violate the Equal Protection Clause because prosecutors and victims retain the right to appeal the grant of parole, while the prisoners' right to appeal has been eliminated. Second, Petitioner claimed that the parole board's reliance on his history of drug addiction in denying his parole violated Title II of the Americans with Disabilities Act. Petitioner filed an amended petition (docket #3), in which he added a Rehabilitation Act claim to his second ground for relief.

II.      Exhaustion

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77

(1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39. Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Petitioner has not shown that his claims were raised before the state courts. An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Pursuant to 1999 statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state law. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(9) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* M.C.R. 7.104(D)(1), (2)(a). Consequently, because state law prohibits a prisoner from appealing a parole denial, Petitioner has no available state court remedy in which to exhaust his claims.

### III. Equal Protection

Petitioner contends that his right to equal protection of the laws has been violated because prosecutors and victims may appeal the grant of parole, while a prisoner has no right to appeal whatsoever. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). In addition, prisoners are not a suspect class. *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class). Thus, in order to establish a violation of equal protection, the petitioner must show that the Michigan scheme is not rationally related to any conceivable legitimate legislative purpose. *Hadix*, 230 F.3d at 843. Under this standard,

> the statute will be afforded a strong presumption of validity and must be upheld as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.' *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely

>on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 2098, 124 L.Ed.2d 211 (1993). The legislature is not even required to articulate any purpose or rationale in support of its legislation. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1, (1992). Consequently, plaintiffs bear the heavy burden of 'negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record.' *Heller*, 509 U.S. at 320, 113 S.Ct. at 2643.

*Hadix*, 230 F.3d at 843.[1]

### A. **Similarly situated**

The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993); *accord Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (equal protection requires "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged"). As stated by the First Circuit,

>The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989). "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

On the one hand, one could argue that inmates, prosecutors, and victims are "similarly situated" for purposes of this case because each may become an aggrieved party as a result of a

---

[1] In *Bickley v. Marschke*, No. 01-1835, 2002 WL 1869367, at *1 (6th Cir. Aug. 13, 2002), the Sixth Circuit declined to reach the merits of an analogous equal protection claim brought by a Michigan state prisoner.

decision--either favorable to parole or unfavorable--by the Michigan parole board. On the other hand, it is difficult to conceive of these parties as being similarly situated for purposes of a parole decision. A prisoner who is denied parole may have his file reviewed again in the future. MICH. COMP. LAWS § 791.234(6)(a), (b). In contrast, allowing the prosecutor and victim to appeal a decision granting parole appears to be the only means by which the state can assure both the public and the victim an opportunity to challenge what they may believe is a wrong decision granting early release. In addition, because "the prison setting is *sui generis*," a legislature's choice "to treat prisoners differently than non-prisoners is plainly justified by the idiosyncratic characteristics of that setting." *Boivin v. Black*, 225 F.3d 36, 44 (1st Cir. 2000). "[P]risoners have substantial quantities of free time, have all their basic needs met, and are provided with free writing materials and often legal assistance." *Hadix*, 230 F.3d at 844. "[W]hat would normally be thought of as the burdens which attend litigation . . . carry few or no opportunity cost to prisoners." *Id*.

However, whether or not prisoners may be deemed "similarly situated" to prosecutors and victims for purposes of a decision of the parole board, it is clear that the petitioner cannot possibly prevail on his equal protection claim because the classification survives rational basis review. *See Wilson*, 148 F.3d at 604 ("differentiation between prisoners and non-prisoners . . . has a rational basis").

    B.    **Rational basis**

"[U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . . The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is

rationally suited to address that problem." *Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners). Where there are "plausible reasons" for the legislature's action, the court's inquiry is at an end; "[i]t is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision[.]'" *U.S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). In addition, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washintgon v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977).

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Michigan Parole Board*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir.

1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").

In addition, Michigan's statutory scheme furthers the rights of victims, *see* MICH. COMP. LAWS § 780.771, which is also a legitimate and rational state purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir.) (reversing district court finding that Texas parole scheme violated prisoners' equal protection rights). Finally, Michigan's parole statutes also include economic considerations, which are a legitimate government interest. In *Morales v. Parole Board*, 676 N.W.2d 221, 234-35 (Mich. Ct. App. 2003), *lv. denied*, 682 N.W.2d 90 (Mich. June 30, 2004), the Michigan Court of Appeals held that the statutory exclusion of prisoners' ability to appeal parole denials did not violate equal protection, in that it is rationally related to the legislature's legitimate interest in saving public funds from innumerable frivolous requests by incarcerated prisoners for review of parole board decisions. *See also Franciosi v. Michigan Parole Board*, 586 N.W.2d 542, 546 (Mich. Ct. App. 1998) (holding that MICH. COMP. LAWS §791.236(6), which prohibited attorneys from representing prisoners at parole release hearings, was rationally related to legitimate economic considerations).

Parole laws represent "the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society." *McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973). Allowing prisoners to be reviewed for parole at specified intervals, while prohibiting them from appealing adverse decisions, is a rational attempt to balance these concerns. The state of Michigan could also rationally intend

the limitation on appeal rights to provide a counter-balance to a prisoner's obvious but understandable incentive to litigate the issue of parole, as well as to protect the state treasury, from which funds will have to be expended in responding to appeals of parole denials. *See Hadix*, 230 F.3d at 845 (holding that § 803(d)(3) of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3), did not violate plaintiff's equal protection rights). Similarly, it is not irrational "for the state to avoid the expense and inconvenience of formal, adversarial type parole hearings." *Johnson*, 110 F.3d at 307 n.11. Here, a tight fit exists between means and end, for prisoner appeals of parole denials are eliminated altogether. That other persons are permitted to appeal grants of parole does not detract from the rationality of the state's limitation.

"The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner v. Jones*, 529 U.S. 244, 251 (2000). "'The problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific.'" *McGinnis*, 410 U.S. at 270 (quoting *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913)). The Court concludes that with respect to the classification challenged by Petitioner, there exists a rational relationship to a legitimate state purpose in Michigan's legislative scheme prohibiting a prisoner from appealing a decision of the Michigan Parole Board to deny parole.

### IV.    Americans with Disabilities Act & Rehabilitation Act

Petitioner claims that the Parole Board relied on his history of drug addiction in denying parole in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. 794(a). Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a

public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability. *See Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Even if Petitioner could show that he is handicapped within the meaning of the ADA and the RA, his complaint contains no allegations that the parole board discriminated against him solely because of his handicap. *See Lee v. Michigan Parole Board*, No. 03-1775, 2004 WL 1532563, at *1 (6th Cir. June 23, 2004). Moreover, neither the ADA nor the RA categorically bar a state parole board from considering an inmate's disability in making an individualized assessment of the future dangerousness of the inmate. *See Thompson v. Davis*, 295 F.3d 890, 898 n.4 (9th Cir. 2002), *cert. denied*, 538 U.S. 921 (2003). A prisoner's disability that leads him to a propensity to commit crime is certainly relevant in determining whether he is qualified for parole. *Id.* In this case, the Parole Board relied heavily on the nature of the crime and Petitioner's history of assaultive crimes in denying parole. The parole board noted that the CSC offense involved violence, victimized a stranger and involved use of a weapon. The parole board's only reference to Petitioner's use of drugs was when it stated that Petitioner "[b]lames criminal history on substance abuse." The parole board's statement suggests that Plaintiff has failed to take responsibility for his criminal conduct by blaming his drug addiction, not that Petitioner was being denied parole on the ground that he has a

history of drug addiction. Even so, the parole board has a legitimate penological interest in considering a prisoner's history of drug use during an individualized assessment for parole suitability.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it is clear from the face of the petition that he is not entitled to habeas corpus relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Commissioner of Correction of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.


Dated: May 4, 2005                                       /s/   David W. McKeague
                                                                               David W. McKeague
                                                                               United States District Judge